UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PARASTU SHARIFI,

    Plaintiff,

v.

EAST WINDSOR TOWNSHIP, DAVID LEVY, and MAX SHUMANOV,

    Defendants.

Civil Action No. 21-7965 (RK) (JBD)

**OPINION**

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon Defendants East Windsor Township (the "Township"), David Levy ("Levy"), and Max Shumanov's ("Shumanov") (collectively, "Defendants") Motion for Summary Judgment ("Defs. Mot.," ECF No. 73), and *pro se* Plaintiff Parastu Sharifi's ("Plaintiff") Cross-Motion for Summary Judgment, ("Pl. Mot.," ECF No. 74). The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion for Summary Judgment is **DENIED**.

I.    **BACKGROUND**

    A. **Procedural Background**

Plaintiff originally filed suit on January 21, 2021 against Defendants in New Jersey Superior Court, Law Division, Mercer County. (*See* ECF No. 1.) Thereafter, on April 2, 2021, Defendants removed this matter to federal court.[1] (*Id.*) On April 13, Plaintiff filed her First

---

[1] Defendants assert that they were not served until March 3, 2021. (*See* ECF No. 1 at 2.)

Amended Complaint. (ECF No. 3.) On May 22, 2022, Plaintiff filed her Second Amended Complaint, adding the Mercer County Board of Taxation (the "Board") as an additional Defendant. ("SAC," ECF No. 38.) Plaintiff asserted claims of racial discrimination, intentional and negligent infliction of emotional distress, and fraudulent property tax assessment arising out of Defendants' alleged unlawful search of her property and levying of property taxes on her condominium. (*See generally, id.*) Defendants answered on June 13, (ECF No. 40), whereas the Board moved to dismiss the SAC on August 12, (ECF No. 46).

Once the Board's Motion was fully briefed, the Honorable Zahid N. Quraishi, U.S.D.J. granted the Board's Motion and dismissed Plaintiff's claims against it. (ECF Nos. 53, 54.) Judge Quraishi held that the Tax Injunction Act (the "TIA") divested the federal court of jurisdiction to hear Plaintiff's claims against the Board, as the TIA "prohibits district courts from enjoining, suspending, or restraining the collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." (ECF No. 53 at 5.) In his Opinion, Judge Quraishi took judicial notice of Plaintiff's suit against the Board in New Jersey Tax Court. (*Id.* at 6.) He thus found that the New Jersey forum provided Plaintiff with a "a sufficiently plain, speedy, and efficient remedy" to challenge the alleged unfair taxes levied upon her. (*Id.* at 6.) Because Plaintiff had "an adequate remedy" in the Tax Court, "the TIA divest[ed] [the district court] of its jurisdiction against the Tax Board," and Judge Quraishi dismissed the claims against the Board. (*Id.*) In addition, Judge Quraishi denied Plaintiff's Motion For Recusal as to himself, (*id.* at 3–4), and a separate motion to recuse the Honorable Douglas E. Arpert, U.S.M.J. who was previously assigned to this matter, (*id.* at 4).

Following the close of fact discovery, both Plaintiff and Defendants filed Motions for Summary Judgment. (*See* ECF Nos. 73 and 74.) Defendants filed an Opposition to Plaintiff's

2

Motion, (ECF No. 75), and Plaintiff filed a response to Defendants' Motion, (ECF Nos. 79, 80). Defendants also filed a reply brief in support of their Motion. (ECF No. 81.) In support of their Motion, Defendants filed a Statement of Facts, ("Defs. SOF," ECF No. 73-3). Plaintiff also submitted a Statement of Facts in support of her Motion. ("Pl. SOF," ECF No. 74 at 8–23.) Defendants filed a response to Plaintiff's Statement of Facts. ("Defs. Resp. To Pl. SOF," (ECF No. 77.)[2]

### B. Factual Background

#### 1. Inspection of Plaintiff's Unit

This action stems from Plaintiff's dispute with her town and its employees relating to her condominium and its taxes. Plaintiff, an Iranian-American, is the owner of 23-13 Old Millstone Drive, East Windsor, New Jersey, a unit that is part of the Windsor Regency Condominium Association ("Windsor Regency"). (*See* Defs. SOF ¶ 1–3; "Sharifi Dep. Tr.," ECF No. 73-2, Ex. B at 10:12–18; 14:15–20; Pl. SOF ¶ 1.) Plaintiff purchased the unit in August 2004 and lived there for just over one year until moving and renting out the unit. (Sharifi Dep. Tr. 14:15–20; 16:1–16; Pl. SOF ¶ 1.)

In February 2020, a cockroach infestation broke out at Windsor Regency. (ECF No. 73-2, Ex. G.) Defendant Shumanov, a "Registered Environmental Health Officer" with the Township of

---

[2] The Court notes Plaintiff did not file "a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement," pursuant to Local Civil Rule 56.1(a) in opposition to Defendants' Statement of Facts. A party's failure to contest results in "any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." L. Civ. R. 56.1(a); *see Contreras v. United States*, No. 19-12870, 2022 WL 970192, at *1 (D.N.J. Mar. 31, 2022) (plaintiff's failure to submit a response to the defendant's statement of facts resulted in "each of the thirty-three facts set forth in the [defendant's facts] be deemed admitted and undisputed for purposes of this Motion"); *Owens v. Am. Hardware Mut. Ins. Co.*, No. 11-6663, 2012 WL 6761818, at *3 (D.N.J. Dec. 31, 2012) ("Without compliance with the Rule, the Court is left to sift through often voluminous submissions in search of-sometimes in vain-the undisputed material facts."). Notwithstanding Plaintiff's significant lapse, the Court has ventured to parse the record to identify any facts in dispute.

East Windsor, contacted Plaintiff and requested to inspect her condominium. (Pl. SOF ¶ 6; ECF No. 73-2, Ex. G.) Shumanov inspected the unit on February 28, 2020 and found no evidence of any infestation. (ECF No. 73-2, Ex. G.) In December 2020, another such outbreak occurred at Windsor Regency. (ECF No. 73-2, Ex. I.) Numerous residents complained, believing that the infestation was originating from Plaintiff's unit. (*Id.*) As such, Windsor Regency management contacted Defendants regarding the infestation. (Pl. SOF ¶ 9.) Shumanov, thereafter, on December 11, 2020, contacted Plaintiff and requested access to inspect her unit again. (*Id.* ¶ 8.) Plaintiff, however, refused to grant access. (*Id.*) Plaintiff and Shumanov exchanged email correspondence in which Shumanov again requested access to Plaintiff's unit and made clear his intent to search multiple units in Windsor Regency, not just Plaintiff's, in order to find the cause of the infestation. (ECF No. 73-2, Ex. M.) Plaintiff again denied the request. (*Id.*; *see also* ECF No. 73-2, Ex. O (Plaintiff again denying Shumanov access).) Subsequently, on February 11, 2020, Plaintiff was served with a Notice of Violation, pursuant to East Windsor Township Ordinance 13-3.3, based on her refusal to allow Defendants to inspect her property.[3] (Defs. SOF ¶¶ 36–37; Pl. SOF ¶ 16; ECF No. 73-2, Ex. R.)

### 2.   *Plaintiff's Property Tax Assessment*

Defendant Levy is the tax assessor for the township of East Windsor. (Defs. SOF ¶ 39.) In this role, Levy is responsible for valuing residential property in the town. (*Id.* ¶ 40.) On March 24, 2021, Plaintiff filed a tax assessment appeal. (*See* Sharifi Dep. Tr. 186:11–22.) On August 20, 2021, Plaintiff filed an action in in New Jersey Tax Court. (*See Sharifi v. Twp. of E. Windsor*, No.

---

[3] The ordinance states, in relevant part, that the "housing officer/inspector is directed to make inspections to determine the conditions of the dwellings, dwelling units . . . in the township in order that he may perform his duty of safeguarding the health and safety of the occupants of dwellings and of the general public. . . . The owner or occupant of every dwelling, dwelling unit . . . shall give the housing officer/inspector . . . free access at all times for the purpose of making such inspection . . . ." (ECF No. 73-2, Ex. R.)

011729-2021 (N.J. Tax Ct.).) Plaintiff contends Defendants lowered the property tax assessments for wealthy homeowners of a different race than Plaintiff but not for Plaintiff, thus racially discriminating against her. (*See* Pl. SOF. 28–31; Sharifi Dep. Tr. 198:2–15.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that the Court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must "view[] the facts in the light most favorable to the party against whom summary judgment was entered." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). A "material fact" is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine dispute" about a fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F. 3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The party moving for summary judgment has the initial burden of establishing its right to summary judgment. *See Celotex Corp.*, 477 U.S. at 323. To show that a material fact is not genuinely disputed, it "must . . . cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The moving party may also meet its burden by

5

"showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). Once the movant meets its threshold burden under Rule 56, the non-moving party must present evidence to establish a genuine issue as to a material fact. *See Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the non-movant "must do more than simply show that there is some metaphysical doubt as to material facts.").

### III. DISCUSSION

Defendants move for summary judgment on all of Plaintiff's claims. (*See generally*, "Defs. Br.," ECF No. 73-1.) First, Defendants argue that Plaintiff's claim under Title II of the Civil Rights Act, specifically 42 U.S.C. § 2000a-2, is not a cognizable cause of action under these circumstances. (*Id.* at 4–6.) As such, Defendants contend that Plaintiff's claim must fail and summary judgment is warranted. (*Id.*) Likewise, Defendants claim that 31 U.S.C. § 6711, also referenced in Plaintiff's Complaint, "has no application to the instant lawsuit." (*Id.* at 6.) Second, Defendant claims that Plaintiff's Fourth Amendment rights were not violated as no search of her property took place. (*Id.* at 7–8.) Third, Defendants contend that Plaintiff's claims related to her property tax assessment—including her claims that she was discriminated against in same—are barred by the Tax Injunction Act (the "TIA", 28 U.S.C. § 1341. (*Id.* at 8–12.) Finally, Defendants argue that Plaintiff's common law claims of intentional and negligent infliction of emotional distress are barred due to Plaintiff's failure to file a notice of claim under the New Jersey Tort Claims Act ("NJTCA" or the "Act"). (*Id.* at 12–14.) Moreover, the tort claims, Defendants contend, must fail as Plaintiff failed to proffer any evidence of a permanent medical injury. (*Id.* at 14–15.)

In her Motion for Summary Judgment, Plaintiff argues that Defendants "racially target[ed] certain groups of residents by abusing their powers and discretion" and "failed to properly supervise the actions and decisions of their employees, and to implement anti discrimination [sic] policies or to enforce any existing policies if there are any." (Pl. Mot. at 8–9.) Plaintiff contends that Defendants have violated both the United States and New Jersey Constitutions by "favor[ing] or unfavor[ing] [sic] the residents and citizens based on their race and financial status." (*Id.* at 9.)

The Court addresses each of Plaintiff's claims in turn.

A.     CLAIMS UNDER FEDERAL CONSTITUTIONS AND FEDERAL STATUTES

In Count One, Plaintiff asserts a claim of racial discrimination against Defendants under two separate and distinct federal statutes—42 U.S.C. § 2000a-2 and 31 U.S.C. § 6711. (SAC ¶¶ 24–38.)[4] Plaintiff also asserts a claim for an unconstitutional search under the Fourth Amendment of the United States Constitution. (*Id.*) Plaintiff contends that Defendants violated her Fourth Amendment rights and racially discriminated against her when they repeatedly requested to search her apartment. (*Id.* ¶¶ 28–38.)[5]

Plaintiff first alleges a claim under 42 U.S.C. § 2000a. This statute prohibits discrimination in public spaces. 42 U.S.C. § 2000a. It states: "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any

---

[4] In addition to failing to comply with to Local Civil Rule 56.1(a), as she must, the Court notes that the complaint is difficult to discern, factually skeletal, and appears to group together distinct statutory, constitutional and common law claims in singular counts. For example, in Count One, Plaintiff groups together claims under two federal statutes, the United States Constitution, and the New Jersey Constitution. (*See* SAC ¶¶ 24–38.) However, given Plaintiff's *pro se* status, the Court has pursued to interpret the SAC with a high degree of liberality. *See Cason v. Middlesex Cnty. Prosecutors' Off.*, No. 18-2101, 2022 WL 2871195, at *3 (D.N.J. July 21, 2022) (A pro se plaintiff's complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (quoting *Montgomery v. Pinchak*, 294 F.3d 492, 500 (3d Cir. 2002)).

[5] Plaintiff also asserts claims under the Fourteenth Amendment and the New Jersey Constitution, which the Court discusses *infra*.

place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). The statute expressly delineates the "covered establishments" to which it pertains. *See* 42 U.S.C. § 2000a(b). These include, *inter alia*, an "inn, hotel, motel, . . . restaurant, lunchroom, . . . gasoline station, . . . [and] sports arena." *Id.* As neither a condominium, nor a township,[6] are established covered by the statute, Plaintiff cannot assert a cause of action under 42 U.S.C. § 2000a. *See Farmer v. Am. Home Med. Equip. & Servs., Inc.*, No. 16-6211, 2018 WL 878367, at *3 n.2 (E.D. Pa. Feb. 14, 2018); *McCrea v. Saks, Inc.*, No. 00-1936, 2000 WL 1912726, at *2 (E.D. Pa. Dec. 22, 2000) ("[E]stablishments not listed in Section 2000a(b)(2) should not be read into that provision."). As such, the Court grants Defendants summary judgment on Plaintiff's claim under 42 U.S.C. § 2000a.

Plaintiff next seeks to assert a claim under 31 U.S.C. § 6711, a statute which is wholly unrelated to any of the supposed allegations of misdeeds here. This statute concerns payments from the federal government to local governments regarding "education to prevent crime;" "substance abuse treatment to prevent crime;" or "job programs to prevent crime." 31 U.S.C. § 6701(a)(2). It provides: "No person in the United States shall be excluded from participating in, be denied the benefits of, or be subject to discrimination under, a program or activity of a unit of general local government because of race, color, national origin, or sex if the government receives a payment under this chapter." 31 U.S.C. § 6711(a). Aside from simply referencing this statute, in the SAC's opening paragraph and again in the heading of "First Cause of Action," leveled among

---

[6] In her opposition brief to Defendants' Motion, Plaintiff contends that "East Windsor Township is the 'place of public accommodation.'" (ECF No. 80 at 11.) Even assuming *arguendo* Plaintiff argued that her condominium was a place of public accommodation, her claim would also fail. *See Welsh v. Boy Scouts of Am.*, 993 F.2d 1267, 1274 (7th Cir. 1993) ("A private home is not the type of facility governed under Title II . . . .").

other statutory and constitutional violations, Plaintiff makes no additional factual or legal claims relating to 31 U.S.C. § 6711. (*See* SAC at 1, 5.)[7]

Prior to asserting suit under this statute, a plaintiff must exhaust their administrative remedies by filing an administrative complaint with the federal government. 31 U.S.C. § 6716(b). Not only is the record devoid of any evidence that Plaintiff exhausted her administrative remedies, but Plaintiff's allegations of discriminatory tax practices or unlawful search are inapposite to the claimed statute.[8] *See Jackson v. Rosen*, No. 20-2842, 2020 WL 3498131, at *7 (E.D. Pa. June 26, 2020) (holding 31 U.S.C. § 6711 not applicable where Plaintiff's allegations of race discrimination did not concern crime prevention). Therefore, the Court grants Defendants summary judgment on Plaintiff's claim under 31 U.S.C. § 6711.

In addition, Plaintiff asserts a claim under the Fourth Amendment of the United States Constitution pertaining to an alleged unconstitutional search of her property. As referenced above, Plaintiff contends that "[t]he requests to revisit the Plaintiff's unit" to search for cockroaches violated "Plaintiff's Fourth Amendment right to be free from unreasonable governmental intrusion and searches." (SAC ¶ 28.) To establish a claim under Section 1983, a plaintiff "must show that the defendants 1) were state actors who 2) violated [her] rights under the Constitution or federal law." *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 169–70 (3d Cir. 2004). "To establish an unlawful search and seizure under the Fourth Amendment, a plaintiff must show that the defendant's actions: (1) constituted a 'search' or 'seizure' within the meaning of the Fourth Amendment, and (2) were 'unreasonable' in light of the surrounding circumstances." *Kailie v.*

---

[7] The SAC contains multiple paragraphs numbered one through four. As such, in this instance, the Court refers to the page numbers of the SAC.

[8] Due to the lack of factual allegations in the SAC, it is not clear to the Court the circumstances that allegedly gave rise to a violation of this statute.

9

*Sweet*, No. 13-4792, 2017 WL 1734027, at *3 (D.N.J. May 3, 2017) (quoting *Williams v. Temple Univ.*, No. 04-831, 2011 WL 2516234, at *3 (E.D. Pa. June 21, 2011)). As a threshold matter, "[t]he "Fourth Amendment's protection against unreasonable searches and seizures is not implicated unless a search or seizure occurs." *United States v. Ridgeway*, No. 15-238, 2016 WL 4429933, at *4 (M.D. Pa. Aug. 22, 2016) (citing *United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006)).

In the case at bar, Plaintiff admits there was no search. Rather, Plaintiff alleges that Defendants "requests" to visit Plaintiff's unit violated the Fourth Amendment. (SAC ¶ 28.) As Plaintiff states, Defendants reached out to inspect her unit for a second time in December 2020, but Plaintiff "referred [Shumanov] [to] his precious inspection . . . and declined his request to revisit the unit." (Pl. SOF ¶ 8.) Plaintiff continued to deny Defendants' requests to reinspect the unit. (*See id.* ¶ 16.) As such, Defendants never revisited Plaintiff's condominium, no search occurred, and no Fourth Amendment violation was committed. *See Ridgeway*, 2016 WL 4429933, at *4. Therefore, the Court grants Defendants summary judgment on Plaintiff's Fourth Amendment claim.[9]

## B.  INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

In Count Two, Plaintiff asserts claims for intentional and negligent infliction of emotional distress. (*See* SAC ¶¶ 39–45.) Plaintiff alleges that Defendants undertook their actions in this matter intentionally and such actions caused "great monetary and mental anguish, shock, mistrust,

---

[9] To the extent Plaintiff attempts to bring a Fourth Amendment claim related to Defendants' first visit to her unit, Plaintiff noted she "agreed" to this visit, (*see* Pl. SOF ¶ 6), and there is no allegation, nor does the record show, that her consent was not voluntary, *see United States v. Bonner*, No. 09-0072, 2010 WL 1628989, at *8 (M.D. Pa. Apr. 20, 2010), *aff'd*, 469 F. App'x 119 (3d Cir. 2012) ("One who voluntarily consents to a search or seizure, however, cannot later assert that his or her Fourth Amendment rights were violated." (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).

10

feelings of helplessness and desperation, sleepless nights, anxiety, and other severe emotional distress." (*Id.* ¶ 44.)

The New Jersey Torts Claims Act (the "Act") governs tort actions against the government and its employees. *See* N.J. Stat. Ann. § 59:1-1 *et seq.* Pursuant to the Act, a plaintiff seeking to assert tort claims against a state entity or its employees must file a notice of claim within 90 days of the tort claim's occurrence. N.J. Stat. Ann. § 59:8-8; *see also Cnty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 174 (3d Cir. 2006) ("To bring an action in tort against a 'public entity or public employee' in New Jersey, the claimant must file a notice of claim with the entity within ninety days of the accrual of the claim . . . ." (citation omitted)). If a plaintiff fails to file a notice within the 90-day period, "the claimant shall be forever barred from recovering against a public entity or public employee." N.J. Stat. Ann. § 59:8-8. A plaintiff's *pro se* status does not excuse its non-compliance with the notice requirement of the NJTCA. *See Sexton v. New Jersey Dep't of Corr.*, No. 21-20404, 2023 WL 8868810, at *12 (D.N.J. Dec. 22, 2023) (barring tort claims brought by a *pro se* plaintiff for failing to file notice of tort claim); *Love v. Edison Townwship*, No. 22-3275, 2023 WL 3597674, at *8 (D.N.J. May 23, 2023) (same).

A narrow exception to the above rule exists for "extraordinary circumstances" wherein "[a] claimant who fails to file notice of his claim within 90 days . . . may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim . . . ." *See* N.J. Stat. Ann. § 59:8-9. In no circumstances, however, can a plaintiff seek to file a late notice two years after the accrual of the tort claim. *Id.*

In the case at bar, the record is devoid of any evidence that Plaintiff filed a notice of tort claim. Plaintiff fails to allege that she filed the requisite notice within 90 days of her claims accruing, nor does she allege that she sought an extension to file a late notice. Moreover, Plaintiff

11

has not demonstrated that extraordinary circumstances prevented her from filing a timely tort notice. Finally, over two years have passed since Plaintiff's claims accrued. The majority of Plaintiff's factual allegations occurred in 2019 and 2020, (*see e.g.*, Pl. SOF ¶¶ 3–9), with the latest allegation, concerning her property taxes, occurring in January 2022, (*see id.* ¶ 35). As such, Plaintiff is well outside the two-year time frame with which to apply for a notice of a late claim. *See* NJ. St. Ann. § 59:8-9. Because Plaintiff failed to file the requisite notice, Plaintiff is barred from asserting her tort claims. *See Sexton*, 2023 WL 8868810, at *12. Therefore, the Court grants Defendants' summary judgment on the intentional and negligent infliction of emotional distress claims.[10]

### C. CLAIMS PERTAINING TO PLAINTIFF'S TAX ASSESSMENT

With respect to her property taxes, Plaintiff asserts claims in Counts One and Three concerning a discriminatory and fraudulent property tax assessment. In Count One, Plaintiff asserts claims for racial discrimination under the Fourteenth Amendment of the United States Constitution and Article VIII of the New Jersey Constitution. (SAC ¶¶ 24–38.) Plaintiff alleges that Defendants discriminated against her by requiring her to pay higher taxes than wealthier homeowners of other races. (*Id.* ¶¶ 31–38.) In Count Three, Plaintiff asserts a claim for fraudulent property tax assessment. (*See id.* ¶¶ 46–52.) Plaintiff contends that Defendants "hike[d] [] the property

---

[10] Moreover, to the extent Plaintiff alleges that Defendants' actions relating to its tax assessment caused the torts, the Act states:
>   Neither a public entity nor a public employee is liable for an injury caused by:
>   a. Instituting any judicial or administrative proceeding or action for or incidental to the assessment or collection of a tax.
>   b. An act or omission in the interpretation or application of any law relating to a tax.

N.J. Stat. Ann. § 59:7-2. As such, the Act explicitly precludes Plaintiff from asserting a tort claim for an injury relating a tax.

taxes . . . of some targeted condominium complexes . . . to earn extra revenue from property tax[es]." (*Id.* ¶ 47.) Plaintiff further alleges that Defendants "harass[ed]" and undertook other "fraudulent conduct," as well discriminately and selectively approved decreases in property taxes in violation of both the United States and New Jersey Constitutions. (*Id.* ¶¶ 48–50.)

As Judge Quraishi explained in his previous Opinion, (ECF No. 53), Plaintiff's SAC "seeks an order from this Court to enjoin the Tax Board from doing its statutorily required duties of reviewing property tax appeals and overseeing municipal tax assessors," (*id.* at 6.) Judge Quraishi held that the TIA "divests federal courts of jurisdiction unless the state fails to provide a 'plain, speedy and efficient' remedy in court." (*Id.* at 5 (quoting *Gass v. Cnty of Alleghany*, 371 F.3d 134, 137 (3d Cir. 2004)). Since the Second Amended Complaint contained no allegations that the New Jersey courts failed to provide such a process to Plaintiff, Plaintiff had an adequate remedy available to her and therefore the TIA barred Plaintiff from asserting her claims in federal court. (*Id.* at 6.)

The Court finds no reason to overrule Judge Quraishi's previous analysis and holding. *See In re Cont'l Airlines, Inc.*, 279 F.3d 226, 233 (3d Cir. 2002) (explaining that under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)); *Scudder v. Colgate Palmolive Co.*, No. 16-7433, 2018 WL 4188456, at *2 (D.N.J. Aug. 31, 2018) ("The law of the case doctrine 'limits relitigation of an issue once it has been decided' in the same case or litigation." (quoting *Hoffman v. City of Bethlehem*, 739 F. App'x 144, 150 (3d Cir. June 20, 2018)).

The Court again takes judicial notice of the fact that Plaintiff has availed herself of the Tax Court of New Jersey, as she filed suit in same. *See Sharifi v. Twp. of E. Windsor*, No. 011729-2021

13

(N.J. Tax Ct.). In her case, the Tax Court ruled in favor of the Township following a trial on the merits. (*See* January 10, 2023 Order, *Sharifi v. Twp. of E. Windsor*, No. 011729-2021 (N.J. Tax Ct.).) Rulings of the Tax Court are "appealable to the Appellate Division and thereafter to the New Jersey Supreme Court." *See also Frybarger v. New Jersey Dep't of Treasury*, No. 05-4648, 2006 WL 3827331, at *3 (D.N.J. Dec. 27, 2006) (citing Pressler, Current N.J. Court Rules 2:2–3(a)(1), 2:2–1(b)). Plaintiff, however, chose not to appeal the decision of the Tax Court, despite such a remedy being available to her. As such, the Court finds that Plaintiff's claims related to Defendants' property tax assessment are barred by the TIA. *See Gass*, 371 F.3d at 137.

Moreover, the Third Circuit has elucidated that the TIA does not "require that the state courts provide a favorable substantive outcome; instead, it only requires access to the state courts and an opportunity for meaningful review." *Gass*, 371 F.3d at 139; *see also Frybarger*, 2006 WL 3827331, at *3 ("[F]ederal courts must decline jurisdiction in state tax cases where the State gives the plaintiff a procedure by which to have his/her claims heard. The availability of the specific remedy sought is not relevant."). This declination applies to the Township, the Mercer County Board of Taxation (previously dismissed by Judge Quraishi), and any individual who may effectuate the taxes. *See Zygmunt v. Fulmer*, No. 10-2486, 2011 WL 13880, at *2 (D.N.J. Jan. 3, 2011) (dismissing complaint against individual director of state taxation division as such suit was barred under the TIA).

This analysis also applies to Plaintiff's claim for a violation of the Fourteenth Amendment pertaining to Defendants' alleged racial discriminatory tax assessment. As one district court explained, "[t]axpayers who bring claims alleging violations of constitutional rights 'must seek protection of their federal rights by state remedies, provided of course that those remedies are plain, adequate, and complete[.]'" *Edouard v. City of Long Branch*, No. 17-3582, 2022 WL

4586420, at *3 (D.N.J. Sept. 29, 2022) (quoting *Fair Assessment in Real Estate Ass'n*, 454 U.S. at 116, 102 S.Ct. 177)). Like the plaintiff in *City of Long Branch*, Plaintiff "takes issue with [Defendants'] method in determining [her] assessment for property tax purposes . . . Boiled down, Plaintiff's discrimination claim is a challenge to the state's tax collection procedure." *Id.* at *3. As such, the TIA bars consideration of same. *Id.*; *see also Reagle v. Elliott*, 80 F. App'x 737, 738 (3d Cir. 2003) (holding TIA barred consideration of plaintiff's Section 1983 claims pertaining to plaintiff's tax assessment).[11]

Finally, Plaintiff asserts a claim under Article VIII, Section 1, Paragraph 1 of the New Jersey Constitution. (SAC ¶¶ 24–38.) This is commonly known as the "Uniformity Clause." *See W. Orange Twp. v. Crest Ridge Realty LLC*, No. 648-2020, 2023 WL 4247265, at *8 (N.J. Tax Ct. June 28, 2023). The New Jersey Tax Court has "jurisdiction to hear any tax-related matters over which the Superior Court would have jurisdiction, [and] the Tax Court [can] correct an unconstitutional assessment." *Gen. Motors Corp. v. City of Linden*, 671 A.2d 560, 566 (N.J. 1996). As such, the state court provides "an opportunity for meaningful review" of Plaintiff's claim under the Uniformity Clause, and the Court must decline jurisdiction over same. *Gass*, 371 F.3d at 139. Therefore, the Court grants Defendants summary judgment as to the remaining causes of action in Counts One and Three of Plaintiff's Complaint.

---

[11] Moreover, there is no evidence in the record, aside from Plaintiff's own unsubstantiated speculation, that Plaintiff's race has in any way impacted her property tax assessments. This conjecture does not raise a genuine issue of material fact to survive summary judgment. *See Williams v. Rowan Univ.*, No. 10-6542, 2014 WL 7011162, at *15 (D.N.J. Dec. 11, 2014) ("An inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment" (quoting *Johnson v. Multi–Solutions, Inc.*, 493 F. App'x 289, 292 (3d Cir. June 28, 2012))); *Skoorka v. Kean Univ.*, No. 16-3842, 2018 WL 3122331, at *14 (D.N.J. June 26, 2018) (finding no inference of discrimination where Plaintiff "point[ed] to no other evidence—not even a stray derogatory remark" aside from subjective belief that actions were grounded in discrimination).

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion for Summary Judgment is **DENIED.** Judgment for Defendants will be entered. An appropriate Order will accompany this Opinion.

_____
ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: August 12, 2024